IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| Vincent Carter (N-74753), | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 16 C 50032 |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| John O'Brien, et al., | ) | |
| Defendants. | ) | |

# ORDER

Plaintiff has paid the full statutory filing fee for this action. Plaintiff may proceed on his complaint. The Clerk of Court is directed to: (1) file Plaintiff's complaint; (2) dismiss and terminate Defendants Dr. Louis Schicker, James Marten, Nedra Chandler, and Wexford Health Sources, Inc.; (3) issue summonses for service of the complaint on Defendants John O'Brien, John Crisham, Tina O'Brien, and Joleer Pyse; and (4) send Plaintiff four blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. The Court advises Plaintiff that a completed USM-285 service form is required for each Defendant for whom summons has issued. The U.S. Marshal will not attempt service unless or until the required form is received. The U.S. Marshal is appointed to service Defendants John O'Brien, John Crisham, Tina O'Brien, and Joleer Pyse. Plaintiff's motion for attorney representation [4] is denied without prejudice to renewal as the case progresses.

# STATEMENT

Plaintiff Vincent Carter, an inmate in the custody of Dixon Correctional Center, brought this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious and painful dental needs. Plaintiff has prepaid the full statutory filing fee. Before the Court is the initial review of plaintiff's complaint.

Under 28 U.S.C. § 1915A(a), the Court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen prisoner litigation claims in the same manner as ordinary Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Here, Plaintiff appears to allege that his gums had been bleeding and sore, but they worsened when, on May 23, 2014, he bit a bone while eating. Due to the bleeding caused by Plaintiff biting the bone, Lt. Arneason, who is not a Defendant, sent Plaintiff to the healthcare unit (HCU) on a dental emergency. Plaintiff there described his problem to the nurse. Two dental assistants, Defendants Tina O'Brien and Joleer Pyse, told the nurse that the dentist was not on the grounds but that they would refer him for dental work. They returned Plaintiff to his housing unit without pain medication. On June 4, 2014, due to worsening pain, Plaintiff again went to the HCU and was told by the dental assistants that no dentist was on the grounds, although Plaintiff believes one was there. They also again stated that they would do a dental referral, but Plaintiff's check of his own medical records revealed no referrals by the dental assistants. Nonetheless, Plaintiff saw Defendant dentist Dr. John Crisham, who refused Plaintiff's request for an x-ray as unnecessary but said that he would schedule an appointment to pull Plaintiff's damaged tooth. He refused to provide pain medication or antibiotics because "a little pain isn't going to kill you," and he doubted that an infection was likely. On June 30, 2014, Plaintiff returned to the HCU on a dental emergency related to throbbing headaches, and was again told that the dentist was not available but that a dental referral would be made. The nurse that day gave him ten 200mg Tylenol for his pain.

On July 1, 2014, Plaintiff awoke with a swollen face due to an abscess. Dr. Wahl, a non-Defendant medical doctor, wanted to drain the infection with a needle, but Plaintiff refused to permit him to do so, because Dr. Wahl was not a dentist. Defendants Tina O'Brien and Pyse merely watched without saying they would alert the dentist of Plaintiff's condition. Dr. Wahl gave Plaintiff antibiotics and pain pills. On July 14, 2014, Defendant Dr. John O'Brien, a dentist, said he would extract Plaintiff's tooth. Plaintiff immediately requested to be fitted for partials because he would be missing four molars. Dr. O'Brien told him he must pay for partials, despite Plaintiff's protestation that he was indigent and would not be able to chew his food without them. Dr. O'Brien refused to submit Plaintiff's request for partials for further review. Plaintiff believed his case fell within IDOC administrative directives for being provided with dental prosthetics without prepayment. He therefore, on July 24, 2014, submitted an emergency grievance to

Defendant Warden Nedra Chandler regarding the dentist's denial of his request for partials without prepayment. Warden Chandler deemed his grievance a non-emergency. Plaintiff submitted other grievances on July 11 and July 22, 2014, regarding the hole in his gums and soreness he attributed to his need for partials. Defendant James Martens, the grievance officer at Dixon, did not require adherence with the administrative directives, as Plaintiff interpreted them, or IDOC's contracts regarding dental care. Plaintiff then, on July 27, 2014, wrote to Defendant Dr. Louis Schicker, the medical director, regarding his request for free partials. Finally, on or around August 1, 2014, Plaintiff wrote to Defendant Wexford Health Sources, Inc., the contracted medical health care provider for IDOC, to seek partials. Plaintiff apparently did not hear back from Dr. Schicker or Wexford.[1]

Plaintiff seeks to bring three claims regarding the foregoing allegations: (1) Defendants O'Brien, Pyse, Dr. Crisham, and Dr. O'Brien were deliberately indifferent to his serious medical needs by denying and delaying needed medical care and prolonging his pain; (2) Defendants Warden Chandler, James Marten, and Dr. Louis Schicker, each failed to intervene to prevent the violations of Plaintiff's rights to be provided with partial dentures; and (3) Defendant Wexford Health Sources, Inc. should be subject to *respondeat superior* liability under 42 U.S.C. § 1983, as the employer of the Defendants named in his first claim.

Accepting the foregoing factual allegations as true, the Court finds that the complaint states a colorable federal cause of action against some Defendants. Where prison officials "kn[e]w of and disregard[ed] an excessive risk to inmate health," a prisoner may show a violation of his Eighth Amendment rights. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A prison official's deliberate indifference to a prisoner's serious medical need accordingly violates the Constitution. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104). However, "[d]eliberate indifference is not medical malpractice," *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008), negligence, or even gross negligence. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

Plaintiff here has sufficiently alleged that he had serious medical conditions in the form of serious dental pain and the need for partial dentures to alleviate pain and permit him to chew his food. *See Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (holding that prisoner sufficiently alleged serious medical condition from dental pain from teeth broken off below gumline rather than surgically removed); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (holding that prisoner's allegations that he was unable to chew food, his mouth bled, and he had headaches and disfigurement without dentures were sufficient for serious medical need); *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940–41 (7th Cir. 2015) ("Any tooth abscess is serious.").

---

[1] This is the last incident set forth in the complaint. Plaintiff does not suggest that the events continue to the present; moreover, as of the time he submitted his complaint, Plaintiff was no longer indigent. The Court does not, therefore, understand the dental problems set forth in the complaint to be ongoing. Plaintiff appears to seek damages for the alleged delays in treatment.

As to the second prong of the analysis, Defendants' deliberate indifference to his needs, Plaintiff has sufficiently alleged deliberate indifference by the Defendants dental assistants Tina O'Brien and Joleer Pyse and dentists Dr. Crisham, and Dr. John O'Brien. Plaintiff, after all, alleges that the dental assistants failed to assist him to obtain prior treatment prior to his abscess and that Dr. Crisham refused to provide medication to alleviate his tooth pain. Plaintiff alleges that Dr. O'Brien refused his request for allegedly medically-necessary partial dentures to allow him to chew and avoid ongoing pain without Plaintiff prepaying for them, despite knowing that Plaintiff lacked the funds to do so.

Plaintiff has not, however, stated claims against Dr. Louis Schicker, James Marten or Nedra Chandler. Plaintiff does not suggest that any of these Defendants were directly involved in his treatment or treatment decisions. Likewise, the fact that Plaintiff notified the prison administrators of his condition but they did not solve his problem for him does not give rise to a reasonable inference that the administrators were deliberately indifferent to his medical needs. The administrators were entitled to rely on the fact that Plaintiff was "receiving regular appointments" with medical staff "in an attempt to address his medical condition." *Medrano v. Wexford Health Sources, Inc.*, No. 13 C 84, 2015 WL 4475018, at *6 (N.D. Ill. July 21, 2015) (dismissing deliberate indifference claims against warden and administrative review board chairperson) (relying on *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) ("If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.")); *see also Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir. 2012) (allegations that prisoner complained to Shicker, "the head of the prison system's medical hierarchy, and "Shicker did not intervene to help him," did not state claim for deliberate indifference). Plaintiff specifically alleged that he had seen the dentist, had his painful tooth resolved, and that the dentist who saw him denied his request for partial dentures. The claims against Schcker, Marten, and Chandler are therefore dismissed without prejudice.

Plaintiff also may not proceed as to Defendant Wexford on a claim of respondeat superior. The Seventh Circuit has previously held that "a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982). Although the Seventh Circuit has more recently questioned that approach, *see Shields v. Illinois Dept. Of Corrections,* 746 F.3d 782, 795 (7th Cir. 2014) (pondering whether "new approach [was] needed [to determine] whether corporations should be insulated from respondeat superior liability under § 1983"), the *Shields* court did not overrule *Iskander*. *Id.* at 796. (citations omitted). The Court must follow existing precedent, *see Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1029 (7th Cir. 2004) ("[D]ecisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted); as it currently stands, the law of this circuit is that private corporations cannot be liable pursuant to Section 1983 under a respondeat superior theory. *Shields,* 746 F.3d 796. This claim, the only one brought against Wexford, is dismissed.

4

Accordingly, Defendants John O'Brien, John Crisham, Tina O'Brien, and Joleer Pyse must respond to the complaint. Nothing in this order, which is based on preliminary review of the complaint, precludes any legal argument that Defendants may advance in response to Plaintiff's allegations.

The Court directs the Clerk of Court to issue summonses for service of the complaint on Defendants John O'Brien, John Crisham, Tina O'Brien, and Joleer Pyse. The Clerk of Court is directed to mail Plaintiff four blank USM-285 (U.S. Marshals service) forms. The Court advises Plaintiff that a completed USM-285 form is required for each named Defendant for whom summons has issued. The U.S. Marshal will not attempt service on a Defendant unless and until the required form is received. Plaintiff must therefore complete and return a service form for each Defendant, and failure to do so may result in the dismissal of the unserved Defendant, as well as dismissal of this case for lack of prosecution.

The U.S. Marshal is appointed to service Defendants John O'Brien, Crisham, Tina O'Brien, and Pyse. The Court directs the U.S. Marshal to make all reasonable efforts to serve these Defendants. With respect to any former employee of the Illinois Department of Corrections who can no longer be found at the work address provided by Plaintiff, officials there must furnish the U.S. Marshal with the Defendant's last-known address. The U.S. Marshal will use the information only for purposes of effectuating service or to show proof of service and any documentation of the address shall be retained only by the U.S. Marshal. Address information will not be maintained in the Court file nor disclosed by the U.S. Marshal, except as necessary to serve Defendants. The U.S. Marshal is authorized to send a request for waiver of service to Defendants in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the clerk of this court in care of the Prisoner Correspondent. In addition, Plaintiff must send an exact copy of any document he files in this Court to Defendants or to defense counsel if an attorney has entered an appearance on behalf of Defendants. Every document submitted by Plaintiff must include a certificate of service stating to whom exact copies were sent and the date of mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff.

Plaintiff's motion seeking attorney representation is denied at this time. Although "[t]here is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In making the decision whether to recruit counsel, the Court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to obtain counsel on his own behalf or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does this particular plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). This analysis

does not focus solely on the plaintiff's ability to try the case, but on his ability to gather evidence and prepare and respond to motions. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Factors to be considered include: (1) the stage of litigation, *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (holding that it is difficult to make an accurate determination regarding a plaintiff's ability to litigate the matter when case is still in "its infancy"); (2) plaintiff's submissions and pleadings, *Olson*, 750 F.3d at 712 (well-written pleadings and appearance that plaintiff can follow instructions indicate that counsel is not needed); (3) medical and mental health issues, *Olson*, 750 F.3d at 712; (4) transfer to a different facility, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (transfer to a different facility may impede plaintiff's ability to obtain evidence including affidavits/declarations from others to support his/her claim); (5) plaintiff's capabilities, including intelligence (IQ), literacy, degree of education, communication skills, and litigation experience, *Pruitt*, 503 F.3d at 655; *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (recruitment of counsel required for a blind inmate with a tenth-grade education); *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014) (enlistment of counsel was necessary for a functionally illiterate inmate); and (6) complexity of the case, *Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566; *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503F.3d at 655-56.

After considering the above factors, the Court concludes that solicitation of counsel for Plaintiff is not currently warranted. The Court notes that, although Plaintiff has not been given leave to proceed *in forma pauperis* as to this lawsuit, he suggests that his funds are insufficient to allow him to hire an attorney. Plaintiff indicates that he has contacted three attorneys or legal organizations for assistance. Plaintiff's ample resources, while potentially insufficient to allow him to engage a paid attorney, should enable Plaintiff to make additional efforts to contact attorneys or organizations seeking legal assistance. Plaintiff is encouraged to continue his efforts to retain counsel on his own and to save any responses to his requests for submission to the Court. The Court notes that Plaintiff remains in the facility in which the events alleged above occurred. Plaintiff takes several medications and has been diagnosed with "depressive disorder and personality disorder," but he does not explain at this juncture how those medications or disorders affect his ability to litigate. The Court notes that Plaintiff is more experienced than many *pro se* litigants, having filed two earlier cases. *See Carter v. Dusing*, 11 C 50370 (Kapala, J.); *Carter v. Yurkovich*, 15 C 50195 (Kapala, J.). Moveover, Plaintiff's pleadings in this case (and his earlier cases) are superior to those of the average *pro se* litigant. Plaintiff has also demonstrated an ongoing ability to understand and appropriately respond to Court orders. Plaintiff asserts that he expects to need assistance "especially during Discovery process." This case, however, is yet in its infancy. Defendants have neither appeared nor responded to the complaint. The Court also grants *pro s*e litigants wide latitude in the handling of their case. Plaintiff's motion is denied, without prejudice to renewal as the case progresses.

Date: May 13, 2016